**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

Debra Williams and Sunnie Williams,

Plaintiffs,

v.

Experian Information Solutions, Inc., Equifax Information Services LLC, TransUnion LLC, and Credit Acceptance Corporation,

Defendants.

Civil Action No: 1:23-cv-02221

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**INTRODUCTION**

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer

reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8. Debra Williams and Sunnie Williams (jointly, "Plaintiffs"), by Plaintiffs' attorneys, bring this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), TransUnion LLC ("TU"), and Credit Acceptance Corporation ("CAC") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information.

9. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11. Defendants committed each of the respective violations identified in this Complaint knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Through this Complaint, Plaintiffs do not allege that any state court judgment was entered against anyone in error, and Plaintiffs do not seek to reverse or modify any judgment of any state court.

**JURISDICTION AND VENUE**

13. Jurisdiction of this Court arises under 28 U.S.C. § 1311 and pursuant to 15 U.S.C. § 1681 *et seq*.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants' transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15. Plaintiffs reside in this District.

**PARTIES**

16. Plaintiffs are each adult individuals and are each a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17. Defendant Experian is a business entity doing business in the Southern District of Indiana.

18. Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

19. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

20. Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. Defendant Equifax is a business entity doing business in the Southern District of Indiana.

22. Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

23. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

24. Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25. Defendant TU is a business entity doing business in the Southern District of Indiana.

26. Defendant TU's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and using interstate commerce to prepare and/or furnish the reports.

28. Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29. Defendant CAC is a business entity doing business in the Southern District of Indiana.

30. Defendant CAC's registered agent address is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

31. Defendant CAC is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

33. Plaintiffs are informed and believe and thereon allege that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

34. Plaintiffs are informed and believe and, on that basis, allege that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiffs for the relief prayed for herein.

**FACTUAL ALLEGATIONS**

35. Sometime on or before July 2019, Plaintiffs purchased a vehicle that was financed with an auto loan serviced by CAC (the "CAC Account").

36. On or about November 8, 2019, Plaintiffs filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiffs' case was assigned Case Number 21-08360-RLM-13 (the "Bankruptcy").

37. On or about July 29, 2020, Plaintiffs' Chapter 13 Plan was confirmed.

38. The holder of the CAC Account, CAC, was listed in the Chapter 13 Plan as a creditor receiving payments through the Trustee conduit.

39. The confirmed Chapter 13 Plan provided a nonstandard provision that stated:

> For all creditors receiving payments through the Trustee conduit, the following plan provision shall apply: This Chapter 13 Plan along with the Confirmation Order is a modification of the original contracted payment terms with the Debtor(s) as set forth herein and allowed under bankruptcy

law. The payment due days, application of payments, assessment of late fees and attorney fees, and balances owed are hereby controlled by the terms described in this Chapter 13 Plan. See (In re Diana Lynn Harvey, 213 F.3d 318 7th Cir. 2000). This modified contract, created by the confirmed Chapter 13 Plan and Confirmation Order, shall only be subject to modification of the Chapter 13 Plan under 11 U.S.C. § 1329. This section is not applicable to direct pay secured creditors not paid through the Trustee conduit.

40. The nonstandard provision in the confirmed Chapter 13 Plan creates an obligation for creditors who choose to credit report to do so in conformity with the modified contract created by the Chapter 13 Plan.

41. This means that creditors who credit report must report the balance of the account within the Bankruptcy, along with the recent payment, payments made, and the current status of those payments.

42. Despite the Chapter 13 Plan, the CAC Account was reported without a balance or payment information on Plaintiffs' TU, Equifax, and Experian credit reports.

43. Plaintiffs' creditors and potential creditors have accessed Plaintiffs' credit reports while the misreporting described herein was on Plaintiffs' credit reports and were misinformed by Defendants about Plaintiffs' credit worthiness.

***CAC and Experian's Inaccurate Reporting of the CAC Account on Plaintiffs' Experian Credit Reports***

44. Upon information and belief, on or before March 13, 2023, CAC and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the CAC Account on Plaintiffs' Experian credit reports.

45. The CAC Account was reported on Plaintiffs' Experian reports with no balance, no amount paid, and no payment history.

46. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the CAC Account, CAC and Experian were incorrectly making it appear as if the CAC Account was negative had been closed.

47. It is inaccurate, incomplete, and/or materially misleading for CAC and Experian to report information which is inconsistent with the Orders entered by the Bankruptcy Court.

48. However, CAC and Experian either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the CAC Account as discussed herein.

***CAC and Equifax's Inaccurate Reporting of the CAC Account on Plaintiffs' Equifax Credit Reports***

49. Upon information and belief, on or before March 13, 2023, CAC and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the CAC Account on Plaintiffs' Equifax credit reports.

50. The CAC Account was reported on Plaintiffs' Equifax reports with no balance, no amount paid, and no payment history.

51. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the CAC Account, CAC and Equifax were incorrectly making it appear as if the CAC Account was negative and had been closed.

52. It is inaccurate, incomplete, and/or materially misleading for CAC and Equifax to report information which is inconsistent with the Orders entered by the Bankruptcy Court.

53. However, CAC and Equifax either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the CAC Account as discussed herein.

***CAC and TU's Inaccurate Reporting of the CAC Account on Plaintiffs' TU Credit Reports***

54. Upon information and belief, on or before March 13, 2023, CAC and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the CAC Account on Plaintiffs' TU credit reports.

55. The CAC Account was reported on Plaintiffs' TU reports with no balance, no amount paid, and no payment history.

56. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the CAC Account, CAC and TU were incorrectly making it appear as if the CAC Account was negative and had been closed.

57. It is inaccurate, incomplete, and/or materially misleading for CAC and TU to report information which is inconsistent with the Orders entered by the Bankruptcy Court.

58. However, CAC and TU either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the CAC Account as discussed herein.

***Plaintiffs' Disputes to Experian***

59. On or after March 13, 2023, Plaintiff Debra Williams disputed CAC and Experian's reporting of the CAC Account on her Experian credit report, pursuant to 15 U.S.C. § 1681i, by notifying Experian, in writing, of the incorrect and inaccurate credit information on the CAC Account.

60. On or after March 13, 2003, Plaintiff Sunnie Williams also disputed CAC and Experian's reporting of the CAC Account on his Experian credit report, pursuant to 15 U.S.C. § 1681i, by notifying Experian, in writing, of the incorrect and inaccurate credit information on the CAC Account.

61. Plaintiffs each sent a letter to Experian requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the CAC Account for both Plaintiffs (the "Experian Disputes").

62. Specifically, Plaintiffs each explained in their Experian Disputes that the CAC Account was paid through the Chapter 13 Trustee.

63. Plaintiffs requested that CAC and Experian list the current balance and the ongoing payments Plaintiffs were making on the CAC Account.

64. Plaintiffs attached supporting documents to the Experian Disputes, including a copy of the Chapter 13 Plan and the Confirmation Order.

65. Upon information and belief, Experian received each of Plaintiffs' Experian Disputes.

66. Upon receipt of the Experian Disputes, Experian was required to conduct a reinvestigation into the CAC Account on Plaintiffs' consumer reports pursuant to 15 U.S.C. § 1681i.

67. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify CAC of Plaintiffs' Experian Disputes within five business days of receiving the disputes, to forward the supporting documents submitted with Plaintiffs' Experian Disputes for CAC to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradelines or delete them from Plaintiffs' respective consumer files.

68. Pursuant to 15 U.S.C. § 1681s-2(b), CAC had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

69. A reasonable investigation by Experian and CAC would have indicated that they were reporting the CAC Account inaccurately, incompletely, and/or in a materially misleading way.

70. However, after receipt of the Experian Disputes, Experian and CAC continued to report inaccurate, incomplete, and/or materially misleading information on the CAC Account on each of Plaintiffs' respective Experian credit reports.

***Plaintiffs' Disputes to Equifax***

71. On or after March 13, 2023, Plaintiff Debra Williams disputed CAC and Equifax reporting of the CAC Account on her Equifax credit report, pursuant to 15 U.S.C. § 1681i, by notifying Equifax, in writing, of the incorrect and inaccurate credit information on the CAC Account.

72. On or after March 13, 2023, Plaintiff Sunnie Williams also disputed CAC and Equifax's reporting of the CAC Account on his Equifax credit report, pursuant to 15 U.S.C. § 1681i, by notifying Equifax, in writing, of the incorrect and inaccurate credit information on the CAC Account.

73. Plaintiffs each sent a letter to Equifax requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the CAC Account for both Plaintiffs (the "Equifax Disputes").

74. Specifically, Plaintiffs each explained in their Equifax Disputes that the CAC Account was paid through the Chapter 13 Trustee.

75. Plaintiffs requested that CAC and Equifax list the current balance and the ongoing payments Plaintiffs were making on the CAC Account.

76. Plaintiffs attached supporting documents to the Equifax Disputes, including a copy of the Chapter 13 Plan and the Confirmation Order.

77. Upon information and belief, Equifax received each of Plaintiffs' Equifax Disputes.

78. Upon receipt of the Equifax Disputes, Equifax was required to conduct a reinvestigation into the CAC Account on Plaintiffs' consumer reports pursuant to 15 U.S.C. § 1681i.

79. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify CAC of Plaintiffs' Equifax Disputes within five business days of receiving the disputes, to forward the supporting documents submitted with Plaintiffs' Equifax Disputes for CAC to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradelines or delete them from Plaintiffs' respective consumer files.

80. Pursuant to 15 U.S.C. § 1681s-2(b), CAC had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

81. A reasonable investigation by Equifax and CAC would have indicated that they were reporting the CAC Account inaccurately, incompletely, and/or in a materially misleading way.

82. However, after receipt of the Equifax Disputes, Equifax and CAC continued to report inaccurate, incomplete, and/or materially misleading information on the CAC Account on each of Plaintiffs' respective Equifax credit reports.

***Plaintiffs' Disputes to TU***

83. On or after March 13, 2023, Plaintiff Debra Williams disputed CAC and TU reporting of the CAC Account on her TU credit report, pursuant to 15 U.S.C. § 1681i, by notifying TU, in writing, of the incorrect and inaccurate credit information on the CAC Account.

84. On or after March 13, 2023, Plaintiff Sunnie Williams also disputed CAC and TU's reporting of the CAC Account on his TU credit report, pursuant to 15 U.S.C. § 1681i, by notifying TU, in writing, of the incorrect and inaccurate credit information on the CAC Account.

85. Plaintiffs each sent a letter to TU requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the CAC Account for both Plaintiffs (the "TU Disputes").

86. Specifically, Plaintiffs each explained in their TU Disputes that the CAC Account was paid through the Chapter 13 Trustee.

87. Plaintiffs requested that CAC and TU list the current balance and the ongoing payments Plaintiffs were making on the CAC Account.

88. Plaintiffs attached supporting documents to the TU Disputes, including a copy of the Chapter 13 Plan and the Confirmation Order.

89. Upon information and belief, TU received each of Plaintiffs' TU Disputes.

90. Upon receipt of the TU Disputes, TU was required to conduct a reinvestigation into the CAC Account on Plaintiffs' consumer reports pursuant to 15 U.S.C. § 1681i.

91. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify CAC of Plaintiffs' TU Disputes within five business days of receiving the disputes, to forward the supporting documents submitted with Plaintiffs' TU Disputes for CAC to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradelines or delete them from Plaintiffs' respective consumer files.

92. Pursuant to 15 U.S.C. § 1681s-2(b), CAC had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

93. A reasonable investigation by TU and CAC would have indicated that they were reporting the CAC Account inaccurately, incompletely, and/or in a materially misleading way.

94. However, after receipt of the TU Disputes, TU and CAC continued to report inaccurate, incomplete, and/or materially misleading information on the CAC Account on each of Plaintiffs' respective TU credit reports.

***CAC and Experian's Continued Inaccurate Reporting after the Experian Disputes***

95. Following Experian and CAC's respective investigations/reinvestigations into the Experian Disputes, Plaintiff Sunnie Williams accessed his Experian report dated September 11, 2023 (the "Sunnie Experian Post-Dispute Report").

96. Following Experian and CAC's investigations/reinvestigations into the Experian Disputes, Plaintiff Debra Williams accessed her Experian report dated September 11, 2023 (the "Debra Experian Post-Dispute Report").

97. Experian and CAC failed to remove or correct the inaccurate, incomplete, and/or materially misleading information contained in the CAC Account on the Sunnie Experian Post-Dispute Report and the Debra Experian Post-Dispute Report.

98. Instead, on the Sunnie Experian Post-Dispute Report and the Debra Experian Post-Dispute Report, CAC and Experian continued to report the CAC Account in an inaccurate, incomplete, and/or materially misleading way.

99. Specifically, CAC and Experian continued to report the CAC Account on the Sunnie Experian Post-Dispute Report and the Debra Experian Post-Dispute Report with: no balance, no monthly payment amount, and no payment history.

100. CAC and Experian's reporting on the Sunnie Experian Post-Dispute Report and Debra Experian Post-Dispute Report was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the CAC Account was negative, that no balance was owed or recent monthly payment had been made, and that Plaintiffs had not made any payments since the Bankruptcy was filed.

101. CAC and Experian's continued inaccurate, incomplete, and/or materially misleading reporting on the Sunnie Experian Post-Dispute Report and Debra Experian Post-Dispute Report and failures to investigate or correct the inaccurately reported information on the

CAC Account were problematic because the Experian Disputes included relevant supporting documents, which CAC and Experian chose to ignore.

102. On September 11, 2023, Experian credit reports for Sunnie Williams and Debra Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

103. On November 22, 2023, Experian credit reports for Sunnie Williams and Debra Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

***CAC and Equifax's Continued Inaccurate Reporting after the Equifax Disputes***

104. Following Equifax and CAC's respective investigations/reinvestigations into the Equifax Disputes, Equifax issued dispute results to Sunnie Williams dated April 5, 2023 (the "Sunnie Equifax Dispute Results").

105. Following Equifax and CAC's investigations/reinvestigations investigations into the Equifax Disputes, Equifax issued dispute results to Debra Williams dated May 26, 2023 (the "Debra Equifax Dispute Results").

106. Equifax and CAC failed to remove or correct the inaccurate, incomplete, and/or materially misleading information contained in the CAC Account on the Sunnie Equifax Dispute Results and the Debra Equifax Dispute Results.

107. Instead, as a result of the Sunnie Equifax Dispute Results and the Debra Equifax Dispute Results, upon information and belief, CAC and Equifax continued to report the CAC Account in an inaccurate, incomplete, and/or materially misleading way.

108. Specifically, CAC and Equifax reported on the Sunnie Equifax Dispute Results and the Debra Equifax Dispute Results that "The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated."

109. The Sunnie Equifax Dispute Results and Debra Equifax Dispute Results did not show how the CAC Account tradeline was actually reporting.

110. Upon information and belief, CAC and Equifax's reporting on the Sunnie Equifax Dispute Results and Debra Equifax Dispute Results was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the CAC Account was negative, that no balance was owed or recent monthly payment had been made, and that Plaintiffs had not made any payments since the Bankruptcy was filed.

111. CAC and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting on the Sunnie Equifax Dispute Results and Debra Equifax Dispute Results and failures to investigate or correct the inaccurately reported information on the CAC Account were problematic because the Equifax Disputes included relevant supporting documents, which CAC and Equifax chose to ignore.

112. On a July 6, 2023, Equifax credit reports for Debra Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information. The CAC Account also inaccurately reported as "Closed."

113. On an August 31, 2023, Equifax credit reports for Sunnie Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

114. On a September 11, 2023, Equifax credit reports for Debra Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

115. On a September 11, 2023, Equifax credit reports for Sunnie Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

116. On a November 16, 2023, Equifax credit reports for Debra Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information. The CAC Account also inaccurately reported as "Closed."

117. On a December 5, 2023, Equifax credit reports for Sunnie Williams, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

***CAC and TU's Continued Inaccurate Reporting after Plaintiff Debra Williams's TU Disputes***

118. Following TU and CAC's respective investigations/reinvestigations into Plaintiff Debra William's TU Dispute, TU issued dispute results to Debra Williams dated March 22, 2023 (the "Debra's TU Investigation Results").

119. TU and CAC failed to remove or correct the inaccurate, incomplete, and/or materially misleading information contained in the CAC Account on the Debra TU Investigation Results.

120. Instead, on the Debra TU Investigation Results, CAC and TU continued to report the CAC Account in an inaccurate, incomplete, and/or materially misleading way.

121. Specifically, CAC and TU did not address the CAC Account Tradeline at all.

122. However, upon information and belief, after Plaintiff Debra Williams's TU Dispute, CAC and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the CAC Account was negative, that no balance was owed or recent monthly payment had been made, and that Plaintiff Debra Williams had not made any payments since the Bankruptcy was filed.

123. CAC and TU's continued inaccurate, incomplete, and/or materially misleading reporting after Plaintiff Debra Williams's TU Dispute and failures to investigate or correct the inaccurately reported information on the CAC Account were problematic because Plaintiff Debra Williams's TU Dispute included relevant supporting documents, which CAC and TU chose to ignore.

124. On Debra Williams's July 6, 2023 TU credit report, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

125. On Debra Williams's November 16, 2023 TU credit report, the CAC Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information.

***The Impact of Inaccurate or Misleading Information on Consumer Reports***

126. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

i. credit or insurance to be used primarily for personal, family, or household purposes;

ii. employment purposes; or

iii. any other purpose authorized under section 1681b.

127. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

128. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

129. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

***Credit Scoring***

130. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

131. Defendants' inaccurate and/or materially misleading reporting has caused Plaintiffs to suffer from reduced FICO credit scores.

132. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

133. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

134. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

135. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

136. Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

137. Here, the inaccurate, incomplete, and/or materially misleading reporting of the CAC Account adversely affects Plaintiffs' FICO scores as Plaintiffs' credit reports make it appear as though Plaintiffs have not been paying on the CAC Account at all and that the CAC

Account would be discharged in the Bankruptcy (or already was discharged) without any payments made by Plaintiffs.

138. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

139. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

***Defendants' Violations of the FCRA and Plaintiffs' Damages***

140. It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

141. It is inaccurate, incomplete, and/or materially misleading to report an account does not have any payments made upon it when the consumer is in fact making payments on the account.

142. It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

143. It is inaccurate, incomplete, and/or materially misleading to report an account is closed when it is open, and a consumer is paying on it as agreed.

144. As evidenced by Experian's failure to report accurate information on the CAC Account after Plaintiffs' respective disputes to Experian—despite having notice of relevant bankruptcy documents—Experian failed to follow reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

145. Experian either ignored or failed to review all relevant information on the CAC Account and thus failed to ensure maximum possible accuracy of the information concerning the individuals about whom the reports relate.

146. As evidenced by Equifax's failure to report accurate information on CAC Account after Plaintiffs' respective disputes to Equifax—despite having notice of relevant bankruptcy documents—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

147. Equifax either ignored or failed to review all relevant information on the CAC Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

148. As evidenced by TU's failure to report accurate information on CAC Account after Plaintiff Debra Williams's dispute to TU—despite having notice of relevant bankruptcy documents—TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

149. TU either ignored or failed to review all relevant information on the CAC Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

150. Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiffs sent Defendants written disputes identifying the inaccurate,

incomplete, and/or materially misleading information related to the CAC Account, Defendants, upon receipt of Plaintiffs' disputes, failed to conduct a reasonable reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

151. Defendants failed to review all relevant information provided by Plaintiffs in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

152. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiffs' information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

153. By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

154. Defendants' inaccurate, incomplete, and/or materially misleading reporting on the CAC Account—in light of their knowledge of the positive data they could report on the CAC Account—was willful. Plaintiffs are, accordingly, eligible for statutory damages.

155. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

156. Based upon Defendants' knowledge of the CAC Account and the data they possessed on the CAC Account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

157. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiffs to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiffs' creditworthiness, damage to Plaintiffs' credit reputation, humiliation, frustration, and emotional distress.

158. Plaintiffs entered bankruptcy to clean up and improve Plaintiffs' credit, lay the groundwork for future credit, and to pay and resolve their debts.

159. Upon information and belief, Plaintiffs' Experian, Equifax, and Trans Union credit reports were published to third parties while the inaccurate information on the CAC Account was reporting.

160. Instead of those third parties seeing the CAC Account as positive account that Plaintiffs were paying on every month, the CAC Account instead appeared as a negative account subject to discharge in bankruptcy, and without any payment data.

161. The inaccurate, incomplete, and/or materially misleading information was published to those third parties and those parties then had an improper view of Plaintiffs' fidelity to the CAC Account.

162. Defendants thus caused a defamation-type harm upon Plaintiffs.

163. Plaintiffs made a commitment to pay their debts as agreed in bankruptcy in the hope of obtaining a fresh start and better credit, but now Plaintiffs worry the inaccurate, incomplete, and/or materially misleading information concerning the CAC Account will prevent that from occurring.

164. Plaintiffs filed Chapter 13 bankruptcy to pay their debts under a Chapter 13 Plan, however, Defendants ongoing inaccurate reporting has taken away the benefits of what should be positive reporting on the CAC Account and is frustrating the rebuilding of their credit.

165. Plaintiffs have avoided seeking credit for the most part because they believe they will be denied, and their credit score will be lowered as a result of Defendants' inaccurate reporting on the CAC Account or that any offer of credit will be on very unfavorable terms.

166. While the inaccurate information concerning the CAC Account appeared on Plaintiffs' credit reports Plaintiffs have refrained from seeking credit, such as financing for new windows, for fear of being denied.

167. Plaintiffs believe the inaccurate, incomplete and/or materially misleading reporting on the CAC Account may negatively impact Plaintiffs' ability to obtain credit to cover the costs of emergencies in the future.

168. Defendants' inaccurate reporting on the CAC Account after Plaintiffs clearly requested a correction has been humiliating to Plaintiffs and has caused Plaintiffs stress and fear that has resulted in insomnia, headaches, and has aggravated both Plaintiffs' high blood pressure.

169. Defendants' inaccurate reporting on the CAC Account after Plaintiffs clearly requested a correction has caused friction in Plaintiffs' marital relationship.

170. Plaintiffs have incurred pecuniary expenses as a result of their efforts to correct Defendants' inaccurate reporting on the CAC Account.

171. Plaintiffs were taught to pay their bills, and have suffered ongoing irritation, frustration, shame, and humiliation knowing that Plaintiffs' current and potential lenders have viewed Plaintiffs' credit reports that fail to reflect Plaintiffs' past and ongoing payments on the CAC Account.

172. Upon information and belief, Defendants' reporting lowered Plaintiffs' credit scores on Plaintiffs' TransUnion, Experian, and Equifax credit reports.

173. Creating the false impression that the CAC Account was negative instead of positive creates a material risk that Plaintiffs would be denied credit, receive less favorable credit treatment than Plaintiffs otherwise would, or receive other unfavorable treatment than Plaintiffs otherwise would, from any viewer of Plaintiffs' credit reports that is engaged in judgment-based lending.

**FIRST CAUSE OF ACTION**
**FCRA - 15 U.S.C. § 1681 *et seq*.**

174. Plaintiffs repeat, re-allege, and incorporate by reference all above paragraphs.

175. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to TU, Experian, and Equifax.

176. Defendants TU, Experian, and Equifax's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

177. Defendants CAC's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

178. The above-described violations by Defendants were willful, allowing Plaintiffs to recover under 15 U.S.C. § 1681n.

179. As a result of each and every willful violation of the FCRA, each Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

180. In the alternative, Defendants were negligent in their actions, which entitled Plaintiffs to recover under 15 U.S.C. § 1681o.

181. As a result of each and every negligent violation of the FCRA, each Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

182. Plaintiffs are entitled to, and demand, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, each Plaintiff respectfully requests the Court grant each Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;
2. Each Plaintiff's actual damages from each Defendant;
3. Statutory damages of not less than $100.00 and not more than $1,000.00 to each Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;
4. Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);
5. An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and
6. Any other relief the Court may deem just and proper.

Dated: December 12, 2023

Respectfully Submitted,

By: */s/Richard J. Shea*

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
*Attorneys for Plaintiffs*
4701 N. Keystone Avenue, Suite 120
Indianapolis, IN 46220

Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com